**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDDIE DELK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 22-cv-1109 |
| | ) |
| CITY OF CHICAGO, CHICAGO POLICE | ) Judge |
| OFFICERS ROBERT CUMMINGS, | ) |
| Star # 17841, NICHOLAS CORTESI, | ) |
| Star # 1146, and MICHAEL HUGHES | ) |
| Star #2957, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S COMPLAINT**

NOW COMES the Plaintiff, EDDIE DELK, by and through undersigned counsel, and complaining of the defendants CITY OF CHICAGO, and CHICAGO POLICE OFFICERS ROBERT CUMMINGS, Star #17841, NICHOLAS CORTESI, Star #1146, and MICHAEL HUGHES, Star #2957, states as follows:

**INTRODUCTION**

1. This is a civil action seeking damages against defendants for committing acts under color of law that deprived Plaintiffs of rights secured by the Constitution and laws of the United States and related state law claims.

**JURISDICTION**

2. This action is brought pursuant the Civil Rights Act, 42 U.S.C. § 1983, 18 U.S.C. § 1589, 1595, and the Fourth and Thirteenth Amendments to the United States Constitution.

1

3. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

## PARTIES

4. PLAINTIFF EDDIE DELK ("Plaintiff") is a citizen of the United States of America, who resides in Cook County, IL.

5. DEFENDANTS ROBERT CUMMINGS, Star #17841, NICHOLAS CORTESI, Star #1146, and MICHAEL HUGHES, Star #2957 were, at the time of this occurrence, duly licensed Chicago Police Officers. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

6. DEFENDANT CITY OF CHICAGO ("CoC") operates the Chicago Police Department ("CPD") and serves as the principal and employer of the CHICAGO POLICE OFFICER Defendants.

## FACTS

7. At all times relevant, the Chicago Police Department maintained and continues to operate an unlawful conspiracy to acquire firearms.

8. In its published "Investigation of the Chicago Police Department," the United States Department of Justice included a section that "CPD must stop using dangerous practices, such as 'guns for freedom,' to coerce people into providing information." Exhibit 1, DOJ Investigation, p. 148.

9. The DOJ Investigation found, "that these practices in fact exist." *Id.* Continuing, the DOJ Investigation highlighted that the practices "erode community trust and undermine the

work of CPD and the community to rid the City of violent crime." *Id.* "We also talked with several individuals who gave credible accounts of being detained by CPD officers for low-level offenses (for example, failure to use a turn signal) or on false pretenses, and then were told that they would not be released until they brought the officers guns." *Id.* at 149.

10. DOJ wrote that *"[i]n addition to the likely illegality of this conduct*, its impact on community trust cannot be overstated. The fear and anger created by these practices was obvious when we talked with individuals who reported these experiences. . . . what we found more broadly throughout our investigation: when practices like this are allowed to persist, CPD allows abusive officers to set the culture, undermining the hard work of CPD's many good officers." *Id.* (emphasis added).

11. DOJ's "review of CPD's misconduct investigations revealed more than 100 complaints of similar conduct; these complaints were only very rarely sustained, even when internally generated complaints arising from the same incident were sustained. In other cases, investigators failed to follow through on the investigation despite possible corroborating evidence." *Id.* at 150. The investigation turned up evidence that CPD supervisors promised employment benefits to officers who recovered guns. *Id.*

12. CPD's practice of trading guns for value persisted before the DOJ's investigation and has continued since publication of the DOJ Investigation.

13. Consistent with and as part and parcel of the above-described unlawful practice by CPD, on or before March 2, 2020, the individual Defendants made an agreement between themselves and with others unknown to trade value for firearms.

14. In furtherance of that agreement, on March 2, 2020, the individual Defendants seized Plaintiff Eddie Delk during a traffic stop without probable cause or any other lawful basis; the officers falsely justified the traffic stop in their reports as a result of Mr. Delk parking without a turn signal.

15. The individual defendants planned to evade CPD's requirement that traffic stops be recorded by operating unmarked vehicles unequipped with in-car video systems and failing to operate their body worn cameras until such time as the allegedly observed failure by Mr. Delk to park without a turn signal had passed.

16. The purpose of this traffic stop was to acquire information about firearms.

17. Consistent with CPD's unlawful practice and agreement, the individual defendants executed an unlawful traffic stop to acquire information about firearms.

18. Mr. Delk was not parking his vehicle as police reported but was in fact leaving when police approached his vehicle. .

19. To avoid detection, the individual defendants operated vehicles that were not equipped with an in-car camera system and their body worn cameras did not record the entire traffic stop in violation of CPD directives and general orders.

20. Without any justification, the individual defendants further unlawfully seized Mr. Delk by ordering him out of the car and unlawfully prolonging the traffic stop beyond the purpose of addressing the alleged violation of parking without a signal.

21. Without any justification or other lawful basis, the individual defendants then conducted an extensive search of Mr. Delk's vehicle.

22. As a result of the unlawful search, defendants allege they recovered brass knuckles from under the driver's seat, and the individual defendants arrested Mr. Delk.

23. During the arrest, the individual defendants promised to reduce the charge Plaintiff faced in exchange for his service as an agent of the police to engage in an unlawful scheme to acquire firearms.

24. At the police station, the individual defendants unlawfully coerced Plaintiff's mother to acquire firearms on behalf of the police in exchange for benefits to her son.

25. In order to keep their unlawful coercion secret, the individual defendants did not report the promise they made to Plaintiffs and created a fiction in the official reports that the acquisition of firearms was unrelated to Plaintiff's arrest.

26. As a result of the aforementioned, Mr. Delk was injured, including but not limited to pain, suffering, humiliation, emotional distress, mental anguish, loss of liberty, and a loss of his constitutional rights.

## COUNT I: 42 U.S.C. § 1983 – Illegal Seizure

### Against All Individually Named Defendants

27. Plaintiff re-alleges the above paragraphs as though fully set forth herein.

28. The individual defendants acted under this Count jointly and as part of an express or implied agreement to seize the plaintiffs.

29. The actions of the defendants constituted a show of authority that restrained Plaintiff's liberty, and Mr. Delk submitted to the defendants' show of authority.

30. The actions of the defendants were intended to detain the plaintiff and coopt his person in an unlawful scheme to obtain firearms.

31. The actions of the defendants led to the detainment of Mr. Delk without any lawful basis.

32. The defendants in fact detained Mr. Delk without any lawful basis.

33. The conduct of the defendants was in violation of the Fourth Amendment to the United States Constitution, to wit:

    a. The traffic stop of Mr. Delk was conducted without any lawful basis and unlawfully extended;

    b. The continued detention of Mr. Delk as a means of coercing citizens to acquire firearms was without lawful basis and unlawfully extended the detention;

    c. The detention of Mr. Delk to acquire firearms on behalf of the police lacked any lawful basis.

34. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiff to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, loss of liberty, and financial loss.

WHEREFORE, Plaintiff demands compensatory damages from the individually named defendants. punitive damages, costs and attorneys' fees against the individual defendants and whatever additional relief this Court deems equitable and just.

### COUNT II: 42 U.S.C. § 1983 – Illegal Search
**Against Individual Defendants**

35. Plaintiff re-alleges the above paragraphs as though fully set forth herein.

36. The individual defendants acted under this Count jointly and as part of an express or implied agreement to search Plaintiff's automobile.

37. The defendants searched the automobile without a warrant, knowing and voluntary consent, or any other lawful basis.

38. The conduct of the defendants was in violation of the Fourth Amendment of the United States Constitution.

6

39. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiff Eddie Delk to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

WHEREFORE, Plaintiff Eddie Delk demands compensatory damages from the individually named defendants. punitive damages, costs and attorneys' fees against the individual defendants and whatever additional relief this Court deems equitable and just.

### COUNT III: 42 U.S.C. § 1983 – Involuntary Servitude
### Against All Individually Named Defendants By All Plaintiffs

40. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

41. The individual defendants acted under this Count jointly and as part of an express or implied agreement to subject Plaintiff to involuntary servitude.

42. The actions of the defendants constituted unreasonable, unjustifiable, and unlawful involuntary servitude of Plaintiff, thus violating their rights under the Thirteenth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

43. The Thirteenth Amendment prohibits anyone from using the law to compel others to perform work and prohibits compulsion through physical coercion or detention.

44. By forcing the Plaintiff to participate in CPD's scheme to acquire firearms or face a legal sanction, the individual defendants violated the Thirteenth Amendment.

45. The use of traffic stops and arrests to compel and coerce citizens to work for the police violates the Thirteenth Amendment's prohibition against involuntary servitude.

46. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiff to

suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

WHEREFORE, Plaintiff demands compensatory damages from the individually named defendants. punitive damages, costs and attorneys' fees against the individual defendants and whatever additional relief this Court deems equitable and just.

### COUNT IV: 18 U.S.C. § 1589 – Forced Labor
### Against All Individually Named Defendants

47. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

48. The individual defendants acted under this Count jointly and as part of an express or implied agreement to subject Plaintiff to forced labor.

49. The statute prohibits obtaining, "the labor or services of a person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse of threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."[1]

50. The statute defines abuse or threatened abuse of law or legal process as, "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).

---

[1] 18 U.S.C. § 1595 provides an independent civil remedy for violations of Chapter 77, Peonage, Slavery, and Trafficking in Persons, with fee shifting and an independent ten-year statute of limitations.

51. By using the power to conduct traffic stops, seizures, arrests, searches, and other conduct that implicates the Fourth Amendment, to exert pressure on citizens to take action on behalf of the police to provide information and acquire firearms, the individual defendants violated 18 U.S.C. § 1589.

52. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiff to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

WHEREFORE, Plaintiff demands compensatory damages from the individually named defendants. punitive damages, costs and attorneys' fees against the individual defendants and whatever additional relief this Court deems equitable and just.

### COUNT V: 42 U.S.C. § 1983 – Failure to Intervene
### Against All Individually Named Defendants

53. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

54. The individual defendants acted under this Count jointly and as part of an express or implied agreement to seize the plaintiffs.

55. The actions of the defendants constituted unreasonable, unjustifiable, and unlawful seizure of Plaintifs, thus violating his rights under the Fourth and Thirteenth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

56. The individual defendants failed to intervene when one or more other defendant officers unreasonably searched and seized Plaintiff, or compelled Plaintiff to perform tasks for the police, as alleged above, even though there was no legal basis to search or seize Plaintiff or compel Plaintiff to perform tasks for the police.

57. The individual defendants knew that one or more of the other defendants were about to search or seize Plaintiff, or to compel Plaintiff to perform labor for the police under threat of legal sanction, had an opportunity to prevent harm to Mr. Delk from occurring, but failed to take steps to prevent the harm from occurring.

58. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Mr. Delk to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

WHEREFORE, Plaintiff demands compensatory damages from the individually named defendants. punitive damages, costs and attorneys' fees against the individual defendants and whatever additional relief this Court deems equitable and just.

### COUNT VI: 42 U.S.C. § 1983 – Monell
### Against Defendant City of Chicago By Both Plaintiffs

59. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

60. At all times relevant, Plaintiff enjoyed and possessed a right under the Fourth, Thirteenth, and Fourteenth Amendment to the Constitution.

61. Plaintiff's injuries were proximately caused by unconstitutional policies and practices on the part of theCity of Chicago.

62. In March 2020, and for a period of time prior thereto, Defendant City of Chicago had notice of a widespread unconstitutional practice by their employees under which citizens, such as Plaintiff, were routinely detained in an unreasonable manner without justification and under the threat of legal sanction unless they provided information or firearms to police officers.

63. These detentions are illegal seizures in violation of the 4th and 14th Amendments.

64. It is common for CPD officers to stop, prolong the detention of citizens without a legally sufficient justification, and threaten their liberty lest they provide the officer with a weapon, information, or some other type of contraband.

65. These detentions and unlawful acts of coercion are violations of the 4th, 13th, and 14th Amendments.

66. It is common for such traffic stops to be made in a way to avoid detection and transparency, without video or other recordings.

67. The City of Chicago has also engaged in a widespread practice of failing to require official reports of official police activities of such traffic stops, and/or failing to require complete and honest reports of their police activities.

68. The failure to require police reports that are complete and honest encourages officers not to report the misconduct of other officers and creates a culture that enables misconduct.

69. In addition to the failure to make police reports, there exists a widespread practice at the City of Chicago under which officers commonly:

　　A) Conduct traffic stops for an illegal purpose and without a lawful basis;

　　B) Prolong traffic stops for illegitimate and unlawful purposes without a legally sufficient basis;

　　C) Use stops to threaten and harass citizens for information;

　　D) Use stops to entrap citizens into producing unregistered weapons and/or contraband;

　　E) Use unlawful traffic stops to force citizens to perform work for the police under the guise of voluntary citizen participation; and

   F) Fail to properly, if at all, inventory weapons and/or contraband produced as a result of these unlawful stops.

70. Furthermore, Defendant City of Chicago fails to discipline officers who have conducted legally deficient stops. Likewise, these defendants fail to discipline their employees when they:

   A) Commit perjury;

   B) Make false arrests;

   C) Create false reports; and

   D) Bring false charges in an effort to cover up their unlawful conduct.

71. Rather than discipline misconduct and require reporting, the City of Chicago allows this widespread practice to flourish. Defendant City of Chicago directly encourages, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control officers, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.

72. In almost every CPD scandal in the last three decades, CPD denied misconduct existed, covered up misconduct, and, when misconduct became exposed, attempted to move on without disciplining officers for their misconduct - except when made absolutely necessary to quell public unrest.

73. In this way, Defendant City of Chicago violated Plaintiff's rights by maintaining policies and practices that were the moving force for the foregoing constitutional violations.

74. The above-described widespread practices, so well-settled as to constitute de facto policy in the City of Chicago, and were able to exist and thrive because governmental

policymakers with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

75. Plaintiff's injuries were caused by employees of the City of Chicago, including but not limited to the individually named Defendant Officers, who acted pursuant to City of Chicago policies and practices in engaging in the misconduct described in this Count.

WHEREFORE, pursuant to <u>Monell v. N.Y. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), Plaintiff demands judgment against Defendant City of Chicago for compensatory damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT VII: 745 ILCS 10/9-102 – Indemnification
### Against Defendant City of Chicago

76. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

77. Defendant City of Chicago is the employer of the individual defendants.

78. The individually named defendant committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should any individually named defendant be found liable on one or more of the claims set forth above, Plaintiff demands that, pursuant to 745 ILCS 10/9-102, the Defendant City of Chicago be found liable for any judgment Plaintiff obtains against said defendant, as well as attorney's fees and costs awarded.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

    Respectfully Submitted,
    EDDIE DELK

    By: <u>s/ Jared Kosoglad</u>

                One of Plaintiff's Attorneys

                JARED S. KOSOGLAD, P.C.
                111 North Wabash Avenue,
                The Garland Building #3166
                Chicago, IL 60602
                T: 312-513-6000
                E: jared@jaredlaw.com


                */s/ Brian Orozco*
                Brian Orozco
                C. NORRIS LAW GROUP, LLC


                C. NORRIS LAW GROUP, LLC
                900 W. Jackson Blvd., Ste. 6E
                Chicago, Illinois 60607
                T: 312-625-6129
                C: 773-998-8861
                E: brian@cnnorrislaw.com


**CERTIFICATE OF SERVICE**

      The undersigned attorney certifies that this pleading was served on all parties of record via the Court's electronic filing system.

 s/ Jared Kosoglad