IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE DELK, | ) |
|          Plaintiff, | ) Case No. 22 C 1109 |
| v. | ) Judge John Blakey |
| CITY OF CHICAGO, CHICAGO POLICE OFFICERS ROBERT CUMMINGS, Star # 17841, NICHOLAS CORTESI, Star # 1146, and MICHAEL HUGHES Star #2957, | ) Magistrate Maria Valdez |
|          Defendants. | ) |

**DEFENDANTS', SERGEANT NICHOLAS CORTESI & OFFICERS ROBERT CUMMINGS AND MICHAEL HUGHES', ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES AND JURY DEMAND**

NOW COME defendants, Sergeant Nicholas Cortesi, and Officers Robert Cummings and Michael Hughes, (hereinafter "Defendants"), by and through on of their attorneys, Allison L. Romelfanger, Assistant Corporation Counsel Supervisor, and for their Answer to Plaintiff's Complaint, states as follows:

### INTRODUCTION

1. This is a civil action seeking damages against defendants for committing acts under color of law that deprived Plaintiffs of rights secured by the Constitution and laws of the United States and related state law claims.

**ANSWER:** **Defendants admit that at all times relevant hereto they were acting under color of law, and that plaintiff purports to bring this civil action seeking damages for various Constitutional claims. Defendants deny they committed the acts as alleged herein and further deny any allegations of wrongdoing or other misconduct.**

### JURISDICTION

2. This action is brought pursuant the Civil Rights Act, 42 U.S.C. § 1983, 18 U.S.C. § 1589, 1595, and the Fourth and Thirteenth Amendments to the United States Constitution.

1

**ANSWER:** **Defendants admit plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, 18 U.S.C. § 1589, 1595 and the Fourth and Thirteenth Amendment. Answering further, Defendants deny any allegations of wrongdoing or other misconduct as alleged herein.**

3. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

**ANSWER:** **Defendants admit jurisdiction is proper.**

## PARTIES

4. PLAINTIFF EDDIE DELK ("Plaintiff") is a citizen of the United States of America, who resides in Cook County, IL.

**ANSWER:** **Upon information and belief, Defendants admit the allegations in this paragraph.**

5. DEFENDANTS ROBERT CUMMINGS, Star #17841, NICHOLAS CORTESI, Star #1146, and MICHAEL HUGHES, Star #2957 were, at the time of this occurrence, duly licensed Chicago Police Officers. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

**ANSWER:** **Defendants admit that at all times relevant hereto they were duly appointed Chicago Police Officers acting within the course and scope of their employment under color of law, and further admit plaintiff purports to sue them in their individual capacities. Defendants deny the remaining allegations in this paragraph and further deny any allegations of wrongdoing or other misconduct.**

6. DEFENDANT CITY OF CHICAGO ("CoC") operates the Chicago Police Department ("CPD") and serves as the principal and employer of the CHICAGO POLICE OFFICER Defendants.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

## FACTS

7. At all times relevant, the Chicago Police Department maintained and continues to operate an unlawful conspiracy to acquire firearms.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

8. In its published "Investigation of the Chicago Police Department," the United States Department of Justice included a section that "CPD must stop using dangerous practices,

such as 'guns for freedom,' to coerce people into providing information." Exhibit 1[1], DOJ Investigation, p. 148.

**ANSWER: Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.**

9. The DOJ Investigation found, "that these practices in fact exist." Id. Continuing, the DOJ Investigation highlighted that the practices "erode community trust and undermine the work of CPD and the community to rid the City of violent crime." Id. "We also talked with several individuals who gave credible accounts of being detained by CPD officers for low-level offenses (for example, failure to use a turn signal) or on false pretenses, and then were told that they would not be released until they brought the officers guns." Id. at 149.

**ANSWER: Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.**

10. DOJ wrote that "[in addition to the likely illegality of this conduct, its impact on community trust cannot be overstated. The fear and anger created by these practices was obvious when we talked with individuals who reported these experiences. . . . what we found more broadly throughout our investigation: when practices like this are allowed to persist, CPD allows abusive officers to set the culture, undermining the hard work of CPD's many good officers." Id. (emphasis added).

**ANSWER: Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.**

11. DOJ's "review of CPD's misconduct investigations revealed more than 100 complaints of similar conduct; these complaints were only very rarely sustained, even when internally generated complaints arising from the same incident were sustained. In other cases, investigators failed to follow through on the investigation despite possible corroborating evidence." Id. at 150. The investigation turned up evidence that CPD supervisors promised employment benefits to officers who recovered guns. Id.

**ANSWER: Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.**

12. CPD's practice of trading guns for value persisted before the DOJ's investigation and has continued since publication of the DOJ Investigation.

**ANSWER: Defendants deny plaintiff has fully and/or accurately stated any practice with regards to the recovery of illegal guns and therefore deny the allegations in this paragraph.**

13. Consistent with and as part and parcel of the above-described unlawful practice by CPD, on or before March 2, 2020, the individual Defendants made an agreement between themselves and with others unknown to trade value for firearms.

---

[1] While plaintiff's complaint lists the DOJ as an exhibit, nothing was ever attached or filed as an exhibit.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

14. In furtherance of that agreement, on March 2, 2020, the individual Defendants seized Plaintiff Eddie Delk during a traffic stop without probable cause or any other lawful basis; the officers falsely justified the traffic stop in their reports as a result of Mr. Delk parking without a turn signal.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

15. The individual defendants planned to evade CPD's requirement that traffic stops be recorded by operating unmarked vehicles unequipped with in-car video systems and failing to operate their body worn cameras until such time as the allegedly observed failure by Mr. Delk to park without a turn signal had passed.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

16. The purpose of this traffic stop was to acquire information about firearms.

**ANSWER:** **Defendants deny plaintiff has fully and/or accurately stated the events of March 2, 2020 and therefore deny the allegations in this paragraph.**

17. Consistent with CPD's unlawful practice and agreement, the individual defendants executed an unlawful traffic stop to acquire information about firearms.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

18. Mr. Delk was not parking his vehicle as police reported but was in fact leaving when police approached his vehicle.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

19. To avoid detection, the individual defendants operated vehicles that were not equipped with an in-car camera system and their body worn cameras did not record the entire traffic stop in violation of CPD directives and general orders.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

20. Without any justification, the individual defendants further unlawfully seized Mr. Delk by ordering him out of the car and unlawfully prolonging the traffic stop beyond the purpose of addressing the alleged violation of parking without a signal.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

21. Without any justification or other lawful basis, the individual defendants then conducted an extensive search of Mr. Delk's vehicle.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

22. As a result of the unlawful search, defendants allege they recovered brass knuckles from under the driver's seat, and the individual defendants arrested Mr. Delk.

**ANSWER:** **Defendants admit that after a search of plaintiff's vehicle, they recovered brass knuckles with a knife attached from under the driver's seat and subsequently arrested plaintiff, but deny the remaining allegations in this paragraph.**

23. During the arrest, the individual defendants promised to reduce the charge Plaintiff faced in exchange for his service as an agent of the police to engage in an unlawful scheme to acquire firearms.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

24. At the police station, the individual defendants unlawfully coerced Plaintiff's mother to acquire firearms on behalf of the police in exchange for benefits to her son.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

25. In order to keep their unlawful coercion secret, the individual defendants did not report the promise they made to Plaintiffs and created a fiction in the official reports that the acquisition of firearms was unrelated to Plaintiff's arrest.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

26. As a result of the aforementioned, Mr. Delk was injured, including but not limited to pain, suffering, humiliation, emotional distress, mental anguish, loss of liberty, and a loss of his constitutional rights.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

## COUNT I: 42 U.S.C. §1983 —Illegal Seizure
## Against All Individually Named Defendants

27. Plaintiff re-alleges the above paragraphs as though fully set forth herein.

**ANSWER:** **Defendants reassert and incorporate their answers to the above paragraphs as though fully set forth herein.**

28. The individual defendants acted under this Count jointly and as part of an express or implied agreement to seize the plaintiffs[2].

---

[2] Plaintiff makes reference to "plaintiffs" throughout, however, there is only one plaintiff in this matter, Eddie Delk.

**ANSWER:    Defendants deny the allegations in this paragraph.**

29. The actions of the defendants constituted a show of authority that restrained Plaintiff's liberty, and Mr. Delk submitted to the defendants' show of authority.

**ANSWER:    Defendants deny plaintiff has truly and/or accurately stated the events of March 2, 2020 and therefore deny the allegations in this paragraph.**

30. The actions of the defendants were intended to detain the plaintiff and coopt his person in an unlawful scheme to obtain firearms.

**ANSWER:    Defendants deny the allegations in this paragraph.**

31. The actions of the defendants led to the detainment of Mr. Delk without any lawful basis.

**ANSWER:    Defendants deny the allegations in this paragraph.**

32. The defendants in fact detained Mr. Delk without any lawful basis.

**ANSWER:    Defendants deny the allegations in this paragraph.**

33. The conduct of the defendants was in violation of the Fourth Amendment to the United States Constitution, to wit:
    a. The traffic stop of Mr. Delk was conducted without any lawful basis and unlawfully extended;
    b. The continued detention of Mr. Delk as a means of coercing citizens to acquire firearms was without lawful basis and unlawfully extended the detention;
    c. The detention of Mr. Delk to acquire firearms on behalf of the police lacked any lawful basis.

**ANSWER:    Defendants deny the allegations in this paragraph, including each subpart hereto.**

34. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiff to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, loss of liberty, and financial loss.

**ANSWER:    Defendants deny the allegations in this paragraph.**

### COUNT II: 42 U.S.C. §1983 —Illegal Search
### Against Individual Defendants

35. Plaintiff re-alleges the above paragraphs as though fully set forth herein.

**ANSWER:** **Defendants reassert and incorporate their answers to the above paragraphs as though fully set forth herein.**

36. The individual defendants acted under this Count jointly and as part of an express or implied agreement to search Plaintiff's automobile.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

37. The defendants searched the automobile without a warrant, knowing and voluntary consent, or any other lawful basis.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

38. The conduct of the defendants was in violation of the Fourth Amendment of the United States Constitution.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

39. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiff Eddie Delk to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

**COUNT III: 42 U.S.C. §1983 — Involuntary Servitude**
**Against All Individually Named Defendants By All Plaintiffs**

**Defendants make no answer to this Count III as it is subject to Defendants' Joint Partial Motion to Dismiss (ECF No. 14).**

**COUNT IV: 18 U.S.C. §1589 —Forced Labor**
**Against All Individually Named Defendants**

**Defendants make no answer to this Counrt IV as it is subject to Defendants' Joint Partial Motion to Dismiss (ECF No. 14).**

**COUNT V: 42 U.S.C. §1983 —Failure to Intervene**
**Against All Individually Named Defendants**

53. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

**ANSWER:** **Defendants reassert and incorporate their answers to the above paragraphs as though fully set forth herein.**

54. The individual defendants acted under this Count jointly and as part of an express or implied agreement to seize the plaintiffs.

**ANSWER:    Defendants deny the allegations in this paragraph.**

55. The actions of the defendants constituted unreasonable, unjustifiable, and unlawful seizure of Plaintiffs, thus violating his rights under the Fourth and Thirteenth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

**ANSWER:    Defendants deny the allegations in this paragraph.**

56. The individual defendants failed to intervene when one or more other defendant officers unreasonably searched and seized Plaintiff, or compelled Plaintiff to perform tasks for the police, as alleged above, even though there was no legal basis to search or seize Plaintiff or compel Plaintiff to perform tasks for the police.

**ANSWER:    Defendants deny the allegations in this paragraph.**

57. The individual defendants knew that one or more of the other defendants were about to search or seize Plaintiff, or to compel Plaintiff to perform labor for the police under threat of legal sanction, had an opportunity to prevent harm to Mr. Delk from occurring, but failed to take steps to prevent the harm from occurring.

**ANSWER:    Defendants deny the allegations in this paragraph.**

58. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Mr. Delk to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

**ANSWER:    Defendants deny the allegations in this paragraph.**

**COUNT VI: 42 U.S.C. §1983 —** *Monell*
**Against Defendant City of Chicago By Both Plaintiffs**

**Defendants make no answer to this Count VI as it is not brought against them and it is subject to Defendants' Joint Partial Motion to Dismiss (ECF No. 14).**

**COUNT VII: 745 ILCS 10/9-102 —Indemnification**
**Against Defendant City of Chicago**

**Defendants make no answer to this Count VII as it is not brought against them. To the extent any allegations herein can be said to be against them, Defendants admit that at all times relevant hereto they were acting under color of law within the course and scope of their employment, but deny any wrongdoing or other misconduct.**

8

**AFFIRMATIVE DEFENSES**

1. Defendants are governmental officials, namely police officers, who perform discretionary functions. At all times material to the events alleged in Plaintiff's complaint on March 2, 2020, a reasonably competent officer, objectively viewing the facts and circumstances then confronting Defendants could have believed their actions regarding the encounter with plaintiff to be lawful in light of clearly established law and the information possessed by Defendants. Defendants are therefore entitled to qualified immunity on plaintiff's claims under federal law.

2. Defendants cannot be held liable for plaintiff's federal claims unless they individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

3. To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that plaintiff had a duty to mitigate his claimed injuries and damages, commensurate with the degree of failure to mitigate attributed to plaintiff by the jury.

4. Plaintiff fails to state a claim under which relief may be granted for Involuntary Servitude (Count III) and Forced Labor (Count IV). Fed. R. Civ. P. 12(b)(6). First, these laws and/or Amendments are *<u>not intended to introduce any new or novel doctrine</u>* such as the one plaintiff attempts to introduce here. *See City of Chicago v. Kunowski*, 308 Ill. 206, 208, 139 N.E. 28 (April 18, 1923)(internal citations omitted); *see also U.S. v. Kozminski,* 487 U.S. 931, 943-944, 108 S. Ct. 2751 (1988)("Our precedents reveal that not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment . . . Similarly,

the Court has recognized that the prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform civil duties.")(internal citations omitted); *Fulton v. Bartik*, 547 F.Supp.3d 799 (N.D. Ill., July 1, 2021)(Thirteenth Amendment not implicated "where a prisoner is incarcerated pursuant to a presumptively valid judgment . . . even though the conviction may be subsequently reversed.")(internal citations omitted); *Loubser v. U.S.*, 6060 F. Supp.2d 897, 915 (alimony not type of subject matter Thirteenth Amendment was designed to address); *Martinez v. Calimlim*, 651 F.Supp.2d 852 (E.D. Wisc., Aug. 26, 2009)(Forced labor where family unlawfully trafficked victim into US and harbored her to exploit her labor.); *Mohammed v. Sidecar Technologies, Inc.*, 2016 WL 6647946, at * 2 (N.D. Ill., Nov. 10, 2016)(allegations did not support that plaintiff continued to work at employer in a condition of servitude with no choice in the matter. Where there is still a choice, however painful, no involuntary servitude existed.) ; *Wright v. Clark County, Ind.*, 132 F.3d 37 (7th Cir. 1997). Indeed civil remedies for forced labor is meant to be, and routinely applied, to human trafficking cases. *See Ali v. Khan,* 336 F.Supp.3d 901 (N.D. Ill., Aug. 21, 2018); *Mouloki v. Epee*, 262 F.Supp.3d 684 (N.D. Ill., June 29, 2017); *Adia v. Grandeur Management, Inc.,* 933 F.3d 89 (2nd Cir. July 25, 2019); *Lagayan v. Odeh*, 199 F.Supp.3d 21 (D.C. Aug. 2, 2016); *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. Apr. 5, 2017). Further, plaintiff fails to allege <u>any facts whatsoever</u> that he in fact, in any capacity, actually *worked or performed any labor* based on any promise by the Chicago Police Department to allegedly reduce charges he faced. *See* plaintiff's Complaint, *generally* (ECF No. 1).

     5.     Plaintiff's claims may be barred by the doctrine of collateral estoppel and/or *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), depending on the outcome of plaintiff's underlying criminal case in *People v. Eddie Delk*, 20119554401.

## JURY DEMAND

Defendants hereby request a trial by jury.

>Respectfully submitted,
>
>*/s/ Allison L. Romelfanger*
>Allison L. Romelfanger
>Assistant Corporation Counsel Supervisor

Carolyn Nevin, Assistant Corporation Counsel
City of Chicago Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-5890
(312) 744-6566 (FAX
*Attorneys for Defendants Cortesi,*
*Hughes and Cummings*

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the foregoing with the Northern District of Illinois ECF System on this 30th day of June, 2022, thereby serving a copy on all counsel of record.

>*/s/ Allison L. Romelfanger*
>*Attorney for Defendants Cortesi, Hughes and*
>*Cummings*